IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**JEFFERY JARAIL WHITE,**

                 **Petitioner,**

        v.                                       **CASE NO. 12-3079-RDR**

**ERIC BELCHER,**

                 **Respondent.**

**MEMORANDUM AND ORDER**

This matter is a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241. Petitioner, a former active duty member of the United States Army now incarcerated at Big Sandy-USP, Inez, Kentucky, proceeds pro se.

**Background**

*Procedural background*

Petitioner was convicted of premeditated murder by a general court-martial composed of officer and enlisted members at Wheeler Army Airfield, Oahu, Hawaii. The panel sentenced him to life without the possibility of parole, a dishonorable discharge, reduction to the grade of Private E-1, forfeiture of all pay and allowances, and a reprimand. The convening authority approved the findings and sentence imposed by the panel.

Petitioner unsuccessfully sought relief before the ACCA and the CAAF before commencing this action. He presents five grounds for relief, namely:

(1) He received ineffective assistance of counsel when defense counsel (a) provided incompetent advice concerning whether

>    his statements to the defense psychologist were discoverable
>    and (b) conducted an inadequate investigation before calling
>    the psychologist as a witness.
> (2) He was denied a speedy trial because he was held in pretrial
>    confinement for 432 days.
> (3) He was denied due process when no forensic evidence was
>    presented by the government despite the collection of such
>    evidence.
> (4) He was denied his due process right to a speedy post-trial
>    review due to the government's 489-day delay in processing the
>    1,330-page record from sentencing to initial action.
> (5) He was denied his right to due process when the CAAF failed
>    to order a rehearing because Brian Cook, a witness, admitted
>    in social media that he is mentally ill and might have
>    committed the murder.

Petitioner presented the claims identified as Grounds 1-4 before the ACCA and Ground 5 before the CAAF.

*Factual background*

Petitioner joined the U.S. Army in September 2002. While stationed at the Schofield Barracks, Hawaii, he and a fellow service member, Specialist Felicia LaDuke ("LaDuke") became involved and had a son. LaDuke pursued a paternity action and established petitioner's identity as the father of the child. Over the weeks preceding LaDuke's death, petitioner expressed anger at her to his friends and stated he was thinking about killing her.

On October 7, 2005, petitioner called LaDuke and asked to meet for a discussion. At petitioner's request, LaDuke picked him up and

they drove to an isolated area known as "the end of the world". Petitioner strangled LaDuke, dragged her body from the car, and drove over her several times before dragging her body to a field, where he took papers from LaDuke's car and discarded them near her body.

Petitioner then returned to just outside the post in LaDuke's car, where he contacted service member Alicia Williams ("Williams") to pick him up outside the gate. Petitioner eventually told Williams he had killed LaDuke. After she dropped petitioner at his apartment, Williams reported the matter to her section sergeant.

Petitioner later contacted his friend Brian Cook ("Cook") and asked him for trash bags and a knife. Cook and petitioner then went for a drive in Cook's car. Petitioner directed Cook to the area where LaDuke's body lay, and on the way there, he told Cook he had killed LaDuke and wanted to make sure she was dead. Cook watched from his car as petitioner examined LaDuke's body. Later that morning, Cook reported their interaction to military police.

At trial, multiple witnesses testified they had heard petitioner make threats to kill LaDuke and dump her body. Cook also testified that petitioner had spoken of killing Williams because she had talked about his admission to her. However, the witnesses testified they did not take petitioner's threats seriously.

Two trial defense counsel were appointed to represent petitioner at the court-martial. Counsel requested that the convening authority appoint a sanity board to evaluate whether petitioner was competent to proceed to trial and whether he possessed a severe mental disease or defect that would render him not criminally responsible. The sanity board determined that petitioner was competent to stand trial and that he had no such mental condition.

Counsel also requested the appointment of an expert witness on forensic psychology. While the convening authority did not appoint the expert specifically requested by counsel, it appointed a substitute expert. Counsel did not object to that appointment.

During the court-martial proceedings, defense counsel presented alternative theories; first, they argued that Cook had the motive and opportunity to kill LaDuke and pointed out the lack of physical evidence connecting petitioner to the crime scene. Alternatively, counsel argued that petitioner acted in the heat of passion and thus had not committed a premeditated homicide. Counsel presented the testimony of the expert to explain that the petitioner was not inclined to violence and that the killing bore indicia of "affective violence", that is, an act committed in a state of rage, rather than "predatory violence", the result of planning and execution.

During cross-examination, the expert testified that during his evaluation, he asked petitioner if he knew the reason for the evaluation, and petitioner stated, "because I murdered my baby's mother." The prosecution also questioned the expert concerning his assessment that petitioner had attempted to "fake bad" on a series of personality tests. Counsel for petitioner then elicited testimony that petitioner had only "faked bad" on a set of tests and not on others in order to allow petitioner an opportunity to avoid a conviction of premeditated murder.

The military judge instructed the panel on the lesser included offenses of unpremeditated murder, voluntary manslaughter, and involuntary manslaughter. As noted, the panel found petitioner guilty of premeditated murder.

Petitioner was informed of his post-trial and appellate rights

by his defense counsel, and the military judge confirmed on the record that petitioner understood these rights.

Defense counsel submitted a clemency petition asking that the convening authority reduce petitioner's sentence to a term of years or to life with the possibility of parole. Petitioner presented a letter requesting clemency based, in part, upon the lack of forensic evidence. The convening authority approved the findings and sentence of the panel.

Petitioner's case then was forwarded to the ACCA for mandatory review pursuant to Article 66, UCMJ, 10 U.S.C. § 866(b). Both petitioner and his appellate defense counsel filed assignments of error, and counsel was allowed to present oral argument concerning the claim of ineffective assistance of counsel.

The ACCA rejected petitioner's assignments of error and affirmed the findings of guilt and the sentence.

Petitioner appealed this decision to the CAAF, which denied his petition for review.

*Standard of review*

A federal court may grant relief in habeas corpus pursuant to 28 U.S.C. § 2241 where a federal prisoner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c). However, the federal courts have only limited authority to review court-martial proceedings. *Burns v. Wilson*, 346 U.S. 137, 139-42 (1952).

This court's review of such a petition is initially limited to a determination whether the claims were given full and fair consideration in the military courts. *Lips v. Commandant, United States Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir. 1993), *cert.*

*denied*, 510 U.S. 1091 (1994). If so, the habeas court will not address the merits and should deny the petition. *See Roberts v. Callahan*, 321 F.3d 994, 995-96 (10th Cir.)(citing *Lips*), *cert. denied*, 540 U.S. 973 (2003).

In this context, an issue is considered to have been given "full and fair consideration" when it was briefed and argued, even if the military court summarily resolved the issue. *Id*. at 997; *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir.), *cert. denied*, 476 U.S. 1184 (1986). Likewise, the failure of a military court to specifically address a claim in its decision does not establish that the issue was not given appropriate consideration. *Lips*, 997 F.2d at 812, n. 2. Rather, where the issue is presented, "the military tribunal has given the claim fair consideration, even though its opinion summarily disposed of the issue with the mere statement that it did not find the issue meritorious or requiring discussion." *Id.*, citing *Watson*, 782 F.2d at 145.

The Tenth Circuit has identified four factors to be considered by the habeas court in determining whether it may review a claim presented by a military prisoner:

> "1. The asserted error must be of substantial constitutional dimension…2. The issue must be one of law rather than of disputed fact already determined by the military tribunals…. 3. Military considerations may warrant different treatment of constitutional claims. 4. The military courts must give adequate consideration to the issues involved and apply proper legal standards." *Roberts*, 321 F.3d at 996.

*Analysis*

Respondent argues the petitioner's claims were presented to the military courts and given full and fair consideration.

*Claim 1: Ineffective assistance of counsel*

Petitioner's claim alleging ineffective assistance by trial defense counsel was briefed by appellate defense counsel. Their argument alleged that trial counsel provided ineffective assistance by calling the appointed expert as a witness because his testimony conflicted with the alternative theory that another individual murdered LaDuke, that the testimony effectively presented an impermissible concession of guilt; and that the testimony was not relevant until the sentencing phase of the proceedings.[1] The second appellate theory of ineffective assistance contended that trial defense counsel failed to properly advise petitioner that his statements to the expert were not privileged, failed to adequately interview the expert witness, and failed to limit the expert's testimony on direct examination.[2] Appellate defense counsel was allowed to present oral argument on this claim.[3]

The ACCA thoroughly addressed these arguments, as well as petitioner's declaration, and applied the correct legal standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner also submitted a petition to the CAAF seeking review, and specifically identified the claim of ineffective assistance.[4]

The court finds this claim was given full and fair consideration under the standard that governs this court's review.

*Claim 2: denial of speedy trial*

---

[1] AR 162.
[2] AR 165-66.
[3] AR 323.
[4] AR 344-404.

Petitioner asserted the claim that he was denied a speedy trial in his pleading submitted to the ACCA pursuant to *Grostefon*.[5] The government declined to address petitioner's *Grostefon* claims, and the memorandum opinion issued by the ACCA stated only that it had considered the issues presented by the petitioner in its evaluation of the record.[6] This summary resolution is sufficient to establish full and fair consideration of the claim in the courts-martial. *Lips*, 997 F.2d at 812, n. 2.

*Claims 3 and 5: due process*

Petitioner presents two claims alleging a denial of due process: first, he challenges the sufficiency of the evidence, due to the government's failure to present forensic evidence in the case against him (Claim 3), and second, he asserts he should have received a rehearing because the government failed to properly investigate after another individual stated in social media that he might have committed the murder (Claim 5).

Both claims were presented by petitioner's trial defense counsel and were part of the record before the ACCA, which conducted a mandatory review of the entire trial record. Likewise, petitioner asserted both claims in the pleading he submitted to the CAAF pursuant to *Grostefon*. That court's statement that it had considered the matters raised by petitioner is sufficient to establish full and fair

---

[5] AR 255-59. *See U.S. v. Grostefon*, 12 M.J. 431 (C.M.A. 1982)(allowing a petitioner to personally present issues before the courts of military review even if appellate defense counsel believes the issues lack merit).

[6] AR 337.

consideration.

*Claim 4: denial of speedy post-trial review*

This matter was asserted before the ACCA by petitioner's appellate defense counsel, who sought a reduction in sentence to life with the possibility of parole.[7] The government responded to this claim and addressed both due process and sentence appropriateness.[8]

The opinion issued by the ACCA does not expressly discuss this claim, but it includes the conclusion that the court had reviewed the entire record of trial and found the sentence imposed to be correct in law and fact. Petitioner did not assert this claim in his pleading addressed to the CAAF.

The court finds this claim was given full and fair consideration by the ACCA.

## Conclusion

The court concludes the petitioner's claims were given full and fair consideration in the military courts and that there is no factor presented that warrants additional consideration in habeas corpus.

IT IS, THEREFORE, BY THE COURT ORDERED the petition for habeas corpus is denied.

IT IS FURTHER ORDERED respondent's motion to strike traverse (Doc. 12) is denied.

Copies of this Memorandum and Order shall be transmitted to the parties.

---

[7] AR 212-220.
[8] AR 289-99.

**IT IS SO ORDERED.**

DATED: This 16th day of September, 2013, at Topeka, Kansas.

>S/ Richard D. Rogers
>RICHARD D. ROGERS
>U.S. Senior District Judge